HOECHST CELANESE CORPORATION,
Appellant,

v.

Mark Gregory COMPTON, Appellee.

No. A14–92–01159–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 16, 1994.

Rehearing Overruled July 21, 1994.

**218**

A. Robert Gloyna, III, Micky N. Das, Houston, for appellant.

Wiley Doran, J.B. Williamson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This case involves an automobile accident that occurred outside of the Hoechst Celanese chemical plant. Following a jury trial, the trial court entered a judgment favorable to Mark Gregory Compton (Compton), appellee. Hoechst Celanese Corporation (Celanese), appellant, brings ten point of error challenging the trial court's judgment. We reverse and render.

Officers Kevin Lawrence and Dianne Currie were off-duty police officers from the Seabrook Police Department. These officers, and others, were engaged by Celanese to direct traffic outside of the Celanese plant. On February 3, 1990, an automobile accident occurred at the intersection of Bay Area Boulevard and Bayport Road, where officers Lawrence and Currie were directing traffic. Compton and another motorist, Luis Alejandro Davidson, were involved in the accident. Davidson's vehicle had stopped at the stop sign on Bayport Road where it intersects Bay Area Boulevard. Davidson was directed by Officer Lawrence to move his vehicle forward. Compton's vehicle, traveling on Bay Area Boulevard, was "waved on" by Officer Currie. The two vehicles collided in the intersection. Compton was injured and brought suit against Celanese and the two officers. Celanese filed a cross-action against the officers for contribution and indemnity.

The case went to the jury. The jury found that all of the parties were negligent. When asked to determine the percentage of negligence attributable to each entity, the jury answered as follows:

| | | |
|---|---|---|
| A. | Mark Gregory Compton | 2% |
| B. | Officer Kevin Lawrence | 15% |
| C. | Officer Dianne Currie | 15% |
| D. | Hoechst Celanese | 68% |
| | Total | 100% |

Based on the jury's findings, the trial court entered judgment for Compton and ordered Celanese to pay $119,068.00 "for its actions other than through its employees, Kevin Lawrence and Dianne Currie," and $51,630.00 "for the actions of its employees, Kev-

in Lawrence and Dianne Currie." The court also found that Kevin Lawrence was liable to Compton for $25,815.00.[1] The court found Celanese jointly and severally liable for the entire judgment. The court awarded prejudgment and postjudgment interest. Celanese took nothing on its cross-action against officers Lawrence and Currie. Celanese appeals from the trial court's judgment.

In its first point of error, Celanese contends the trial court erred in rendering judgment for appellee because the evidence established as a matter of law that the police officers were independent contractors and not employees of Celanese. Therefore, Celanese claims it is not liable for the acts of the officers.

■ Celanese styles this point of error as a "matter of law" point. When a party challenges the legal sufficiency of an adverse finding on an issue upon which he or she had the burden of proof, that point should be styled as a "matter of law" challenge rather than a challenge to the legal sufficiency. *See Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex. App.—Houston [1st Dist.] 1987, no writ). Thus, Celanese seems to believe that it had the burden to prove whether the officers were employees or independent contractors. This belief likely arose because of the presumption that exists regarding the employer-employee relationship. *See Taylor, B. & H. Ry. Co. v. Warner*, 88 Tex. 642, 32 S.W. 868, 870 (1895).

■ Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done. *Warner*, 32 S.W. at 870; *Eagle Trucking Co. v. Texas Bitulithic Co.*, 590 S.W.2d 200, 212 (Tex.Civ.App.—Tyler 1979), *aff'd in part and rev'd in part on other grounds*, 612 S.W.2d 503 (Tex.1981). Once the presumption is raised, the burden of

proof shifts and the defendant has the burden to escape liability by establishing that the workman was an independent contractor. *Eagle Trucking*, 590 S.W.2d at 212.

■ Thus, when *Compton* showed, as he did, that the officers were performing traffic control for Celanese, a presumption arose that the officers were the employees of Celanese. It would have then become Celanese's burden to prove that the officers were independent contractors, in order to avoid liability. However, the questions that were submitted to the jury simply asked whether the officers were employees or independent contractors. There were no instructions given to the jury concerning the above mentioned presumption, therefore, the burden remained on Compton to prove by a preponderance of the evidence that the officers were Celanese employees.[2] Since the burden of proof never shifted to Celanese, it should have styled this point of error as a "no evidence" point or a challenge to the legal sufficiency of the evidence to support the jury's findings. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied).

■ Legal sufficiency points assert that there is a complete lack of evidence on an issue. *Id.* If an appellant attacks the legal sufficiency of an adverse finding of an issue on which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Id.* at 276; W. Wendell Hall, *Revisiting Standard of Review in Civil Appeals*, 24 St. Mary's L.J. 1045, 1133 (1993). In reviewing a "no evidence" point or a challenge to the legal sufficiency of the evidence, an appellate court considers only the evidence and inferences that tend to support the finding, and disregards all evidence to the

---

1. Officer Dianne Currie was non-suited by Compton before the charge went to the jury.

2. If Compton had so desired, he could have objected to the issues as submitted and requested an instruction that would have apprised the jury about the presumption involving the employer-employee relationship. Since Compton showed that the officers were performing traffic control for Celanese, the presumption arose that the officers were the employees of Celanese. Compton was entitled to an instruction to this effect; however, he did not object to the submission of the questions, nor did he request an instruction regarding the presumption. Thus, the burden remained upon him to prove that the officers were employees of Celanese. However, even if the burden had been shifted to Celanese, we would find that Celanese presented sufficient evidence to overcome this burden.

contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). If there is any evidence of probative force to support the jury's finding, the point of error must be overruled and the finding upheld. *Southern State Transp., Inc. v. States,* 774 S.W.2d 639, 640 (Tex.1989). If there is more than a scintilla of evidence to support the finding, the "no evidence" challenge fails. *Stafford,* 726 S.W.2d at 16. A scintilla of evidence exists when the evidence offered to prove a vital fact is so weak as to do nothing more than create a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). The evidence offered must be more than this or it is legally "no evidence." *See Stafford,* 726 S.W.2d at 16. In application, "if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force," then this is the equivalent of "no evidence." *Kindred,* 650 S.W.2d at 63. The appellate court may not second guess the jury unless only one inference may be drawn from the evidence presented. *Ross v. Green,* 135 Tex. 103, 118, 139 S.W.2d 565, 572 (1940). Only when the evidence furnishes a rational basis for reasonable minds to differ as to the existence of a pivotal fact, does it amount to more than a scintilla of evidence such that the legal sufficiency challenge should be overruled. *Kindred,* 650 S.W.2d at 63.

■ An independent contractor has been defined as any person who, "in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Living, Inc. v. Redinger,* 667 S.W.2d 846, 855 (Tex.App.— Houston [1st Dist.] 1984), *rev'd on other grounds,* 689 S.W.2d 415 (Tex.1985) (quoting *William Sommerville & Son, Inc. v. Carter,* 571 S.W.2d 953, 956 (Tex.Civ.App.—Tyler 1978), *aff'd,* 584 S.W.2d 274 (Tex.1979)).[3]

The standard tests for determining whether one is acting in the capacity of an independent contractor measure the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964). The court generally analyzes five factors in determining the amount of control retained by the employer: (1) the independent nature of the workman's business; (2) his obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) whether he is paid by time or by job. *Pitchfork Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961); *Eagle Trucking Co.,* 590 S.W.2d at 212.

■ After examining all of these factors, the trial court should only submit the issue to the jury if it finds that there is conflicting evidence as to the status of the workman; however, if the facts are not disputed, and the evidence is reasonably susceptible of only one inference, the question of whether the workman is an independent contractor or an employee is a question of law for the court. *Eagle Trucking Co.,* 590 S.W.2d at 212.

While each party put on evidence concerning the status of the officers, the evidence supporting the jury's finding that the officers were employees, was insufficient as a matter of law. Again, the pivotal issue in determining whether a workman is an independent contractor or an employee is the employer's control over the workman. *Newspapers Inc.,* 380 S.W.2d at 591. There was absolutely no evidence submitted by Compton to show that Celanese exercised any control over the officers regarding the details of the traffic control. The evidence shows that the **only** control exercised by Celanese over the officers was to instruct them as to when and where they were to direct traffic and to ask them to wear their police uniforms.

---

3. The trial court defined "independent contractor" in the charge as follows:
 [A] person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represent the will of such person only as to the result of his work and not as to the means by which it is accomplished.

When the five factors used to determine control are analyzed, it is clear that the officers engaged by Celanese to direct traffic outside of the plant were independent contractors. Traffic control is by its nature an independent business. The officers brought their own equipment to the job site, except for ten traffic cones provided by Celanese. In fact, when Officer Lawrence asked Celanese for walkie-talkies, he was told that Celanese did not have any. He responded that the officers would provide their own. The officers provided their own reflective vests, borrowed from the Seabrook Police Department and the Seabrook Department of City Works. There is nothing in the record to suggest that Celanese had any right to control the "progress of the work." Celanese only controlled the time and the place where the work was to take place. The officers were paid individually and by the hour. No deductions were taken from their checks for social security or federal income tax. The officers were not given the benefits or training available to Celanese employees.

██ Compton argues that Kevin Lawrence testified that he was hired as an employee of Celanese, not as an independent contractor. Compton mischaracterizes Lawrence's testimony. Kevin Lawrence stated that he was never told that he was hired as an independent contractor. He did not testify that he was hired as an employee. This was confirmed by Rose Mary Lott, the Celanese employee responsible for finding officers to direct traffic outside the plant. More importantly, however, such testimony would not prove that the officers were employees even if Lawrence had testified as Compton claims. The key inquiry in such a situation is control, not a party's belief as to their status. Lawrence's testimony that he was never told he was an independent contractor is not evidence showing Celanese's right to control the details of the officers' work.

██ The evidence shows that the only real control that Celanese exercised over the police officers was in directing when and where traffic control was to take place. The fact that Celanese exercised some general control or supervision over the officers, e.g. time, place, and manner of dress, does not show that Celanese had the right to control the details of the work, the standard for determining whether a party is an employee or an independent contractor. *Id.* The evidence shows that Celanese exercised control over the officers for the purpose of seeing that the work was done at the right time and in the right place. This type of general control over an independent contractor does not result in making him or her an employee. *Living, Inc.,* 667 S.W.2d at 856. Considering only the evidence supporting the jury's finding, we hold there is no evidence to support the jury's finding that the police officers were Celanese employees.

██ Compton argues that even if the officers were independent contractors, Celanese is still liable to Compton under his negligence theory because there are exceptions to the rule that a person or entity is not liable for the acts of their independent contractors. Compton claims that the traffic control conducted by the officers was inherently dangerous or it was a public nuisance, and therefore, Celanese cannot escape liability by claiming the officers were independent contractors. In support of this proposition, Compton cites several cases where employers were held liable for the acts of their independent contractors. The cases concern situations where the employer contracted for construction on public roadways.

Compton first cites *Kampmann v. Rothwell,* 101 Tex. 535, 109 S.W. 1089 (1908). He argues that the case supports his claim that Celanese cannot escape liability by claiming the officers were independent contractors. In *Kampmann,* Mrs. Kampmann contracted with Fitzgerald & Basille to build a sidewalk in front of her property. *Id.* at 1089. Under the terms of the contract, Fitzgerald & Basille were independent contractors. *Id.* Sometime after the construction was complete, the sidewalk broke and Mrs. Kampmann refused to pay the contractors unless the break was repaired. *Id.* Fitzgerald & Basille agreed, though they felt they had no contractual obligation to repair the sidewalk. *Id.* The contractors took out a section of the sidewalk and replaced it with fresh cement. *Id.* In order to protect the work from those traversing the sidewalk, they laid planks over

the top of the fresh cement. *Id.* The sidewalk was on the side of a public street in front of Mrs. Kampmann's property and was a public highway in the city of San Antonio. *Id.* The contractors did not place any rails around the sidewalk to prevent persons from walking on it, nor did they post warning signs or other signals to notify pedestrians of the existence of the planks on the sidewalk. *Id.*

Rothwell was passing along the sidewalk at night and did not see the repair work. He fell over the end of the planks and was injured. *Id.* Rothwell brought suit against Mrs. Kampmann. *Id.* She plead that Fitzgerald & Basille were responsible for any damages that she might have to pay because they were independent contractors and had laid the planks without placing adequate warnings. *See id.*

The Texas Supreme Court, assuming that Fitzgerald & Basille were independent contractors, nevertheless held that Mrs. Kampmann was liable for the injuries caused to Rothwell by the negligence of the contractors in failing warn of the danger caused by the repair. *Id.* at 1089–90. The court stated:

> The party contracting for the work was liable * * * where the work to be done necessarily constituted an obstruction or defect in the street or highway which rendered it dangerous as a way for travel and transportation, unless properly guarded or shut out from public use; that in such cases the principal for whom the work was done could not defeat the just claim * * * of the injured party by proving that the work which constituted the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is unauthorized to do, the parson who employs the contractor and authorizes him to do those acts is equally liable to the injured party.

*Id.* at 1090 (quoting *Robbins v. Chicago City*, 71 U.S. (4 Wall.) 657, 18 L.Ed. 427 (1866)).

Compton seems to argue that because the officers were in or near the public roadway directing traffic, they constituted an "obstruction or defect which occasioned the injury." It would follow then that Celanese cannot escape liability because it contracted for

the work that created the obstruction or defect. We do not accept this line of reasoning. In fact, we are of the opinion that *Kampmann* and *Robbins* more strongly support the proposition that Celanese is not liable in this instance.

Throughout the entire *Kampmann* decision, the court focused on the fact that there were no lights, no signals, no guard rails to warn of the obstruction created by the repairs to Mrs. Kampmann's sidewalk. The United States Supreme Court, in *Robbins,* also focused on the fact that an employer could not use the independent contractor defense ". . . where the work to be done necessarily constituted an obstruction or defect in the street or highway which rendered it dangerous as a way for travel and transportation, *unless properly guarded* . . . ." Thus, the strong implication that exists in both of these cases is that if an obstruction or defect is created *and not properly marked or guarded,* the independent contractor defense is unavailable. *See id.* [emphasis added]

This reasoning is especially applicable in the case before us. Celanese was conducting a maintenance shut-down of its chemical plant. Testimony presented in court showed that Celanese was expecting an increase in the number of employees entering and leaving the plant during shift changes. It was estimated that eight hundred people would be entering and leaving the plant between 6:00 a.m.–8:00 a.m. and 4:00 p.m.–6:00 p.m. It is undisputed that the road in front of the Celanese plant, from and onto which this large number of people would be entering and exiting, was a major four-lane divided highway with a speed limit of 50 m.p.h. The only traffic signal that existed at the intersection was a single stop sign. Celanese did everything feasible to prevent creation of an unguarded obstruction on the highway. *Robbins* and *Kampmann* do not support the proposition asserted by Compton. The "officers" were not an obstruction as contemplated in these two cases. The obstruction Celanese was guarding against was eight hundred extra automobiles.

■ Compton cites two cases for the proposition that Celanese is liable even if the

officers are independent contractors because the obstruction created by the officers constituted a nuisance. *Gehring v. Strakos,* 345 S.W.2d 764 (Tex.Civ.App.—Houston 1961), *rev'd on other grounds,* 360 S.W.2d 787 (Tex. 1962); *Moore & Savage v. Kopplin,* 135 S.W. 1033 (Tex.Civ.App.1911, writ ref'd). Again, we find these cases supportive of the actions taken by Celanese.

In *Kopplin,* a man was injured when he was knocked from the platform of a street car by a post erected too closely to the street. *Kopplin,* 135 S.W. at 1035. The man sued San Antonio Traction Company, owner and operator of the street car, Haynes, the contractor who erected the post, and the estate of the man who hired the contractor. *Id.* The Estate sought to avoid liability based on the independent contractor defense. *Id.* at 1036. In imposing liability upon the estate, the court held:

> Any unauthorized or unreasonable obstruction or encroachment in or on a public highway, which impedes the use thereof or renders it more difficult, or increases the danger of injuries to person or property, or general interference with public rights, constitutes a public nuisance at common law.

*Id.* The court stated that a party who erects an obstruction or encroachment must show he had legal authority to erect it in order to relieve himself of liability. *Id.* If he has no legal authority, the fact that the obstruction or encroachment was erected by an independent contractor under a contract is no defense to liability because one cannot contract to do an illegal act. *Id.* at 1037. Under those circumstances, both the employer and the independent contractor are liable for the injuries resulting from the erection of the nuisance. *Id.*

 First of all, we find the case distinguishable on its facts. In this case, and others that follow it, the court is dealing with a nuisance. To constitute a nuisance, the danger must be inherent **in the thing itself.** *Schneider v. City of Cuero,* 749 S.W.2d 614, 617 (Tex.App.—Corpus Christi 1988, writ denied). The damage must result from the thing itself rather than from negligent acts of

employees. *Id.* In *Schneider,* the plaintiffs contended that the City's operation of a landfill was a nuisance. *Id.* at 615. The court held that the damages suffered by the plaintiffs did not flow from the normal operation of the landfill; rather, the damages resulted from employees negligently failing to cover up the garbage in the landfill. *Id.* Thus, the court found that plaintiffs' suit sounded in mere negligence, not in nuisance.

In *Kopplin* and *Gehring,* the damages suffered by the plaintiffs resulted from the thing itself and not from the acts of any employees or contractors in the operation of the item. *See Gehring,* 345 S.W.2d at 769 (plaintiff fell in hole left by contractor); *Kopplin,* 135 S.W. at 1035 (plaintiff knocked off street car by post erected too close to street). In the cases, the court properly found there was a nuisance.

In the case before us, there is no "thing" that is dangerous or obstructive. There is no post, no plank, no hole in the ground. All damages in this case flowed from the officers' actions, i.e., negligent traffic control, not from the mere fact that the officers were on or near the highway. Thus, there is no nuisance in the legal sense. Compton cannot use the nuisance theory to defeat Celanese's independent contractor defense.

Second, *Kopplin* holds that if an obstruction on a public highway **increases** the danger of injuries to persons or property, it is a nuisance. *Kopplin,* 135 S.W. at 1036. Here, the danger would have been much greater if Celanese had not provided traffic control by police officers. Without traffic control, approximately eight hundred extra automobiles would enter the 50 m.p.h. highway with only the guidance of a single stop sign. We find this to be a much more dangerous proposition, and one that could also put Celanese in the position of defending itself in a lawsuit. *See Dixon v. Houston Raceway Park, Inc.,* 874 S.W.2d 760 (Tex.App.—Houston [1st Dist.] 1994, n.w.h.). Thus, Celanese did not increase the danger of injuries, it actually decreased the danger by hiring police offi-

cers to control the traffic, and thereby did not create a nuisance.[4]

■ Lastly, Compton did not plead nuisance as a cause of action nor was it specifically raised during trial. A party cannot raise an issue on appeal if the issue was not raised in the party pleadings or during trial. *Stafford v. Stafford*, 726 S.W.2d 14, 15 (Tex.1987). Thus, Compton cannot raise the claim of nuisance on appeal in response to Celanese's independent contractor defense. *See id.*

■ Compton next cites *Cage v. Creed*, 308 S.W.2d 78 (Tex.Civ.App.—Waco 1957, no writ) claiming Celanese is liable for the negligence of its independent contractors because it could not delegate its duty of care to the police officers. This argument is based on Compton's claim that the traffic control conducted by the officers was inherently dangerous. *Cage* does not support this argument and we disagree with Compton's theory.

In *Cage*, the State of Texas awarded a highway construction contract to Cage Brothers. *Id.* at 79. Part of the contract required Cage Brothers to excavate Road 664 in Ellis County. *Id.* On November 18, 1956, Wanda Creed, a passenger in an automobile, was injured when the automobile fell in to the excavation. *Id.* There were no flares or other illuminated signs at the excavation site on the night of the wreck. *Id.* Cage Brothers contended it was not responsible for Creed's injuries because it had subcontracted out the excavation work to Winters and Martin. *Id.* at 79–80. Cage Brothers claimed that Winters and Martin were independent contractors and therefore, it was not liable for their negligence in failing to place appropriate warning signs at the excavation site. *Id.*

The court held that generally, an employer is not liable for the negligence of an independent contractor; however, if the work is inherently dangerous, the duty of care cannot be delegated, even to an independent con-

tractor. *Id.* at 80. The court stated that since Texas cases have uniformly held that excavations in public roads are "inherently dangerous," Cage Brothers could not delegate its duty of care. *Id.*

Compton was not injured because of an excavation in the road. He was not injured because of any type of highway construction. Compton has cited no authority and we have found none that holds that traffic control, conducted by police officers, is inherently dangerous. There was no inherent danger in this case and therefore, the independent contractor defense is not displaced based on this theory.

We wish to note that Compton also never pled or presented evidence on the theory that traffic control was inherently dangerous. Thus, this claim, like Compton's claim of nuisance, cannot be raised for the first time on appeal. *See Stafford*, 726 S.W.2d at 15.

■ Compton next contends that the actions taken by Celanese were unlawful under Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 36–37 (Vernon 1977). Compton argues that if the performance of the contracted work is unlawful or creates a nuisance, the employer may be responsible for injuries to third parties caused by the contractor. 44 Tex.Jur.3d *Independent Contractors* § 24 (1981). We have already determined that no nuisance was created, now we must decide whether Celanese's action, in hiring police officers to direct traffic, was unlawful.

Section 36 and 37 of article 6701d concern the display of unauthorized traffic signs, signals, and markings, and the alteration, removal or injury to such items. These sections are inapplicable to the case before us.

Section 36 states, in pertinent part:

(a) No person shall **place, maintain, or display** upon or in view of any highway any unauthorized **sign, signal, marking or device which purports to be or is an**

---

4. In point of error nine, Celanese claims the evidence is legally insufficient to support the jury's answer to question number three. In that question, the jury found that the activities of Officers Lawrence and Currie and Celanese rendered the highway "impassable" or rendered it "unreasonably inconvenient or hazardous."

Though in our discussion of Celanese's first point of error we have determined that Celanese did not increase the danger of injury or property damage so as to create a nuisance, we will discuss the sufficiency of the evidence to support the jury's answer to question number three when we discuss this part of the ninth point of error.

**imitation of or resembles an official traffic-control device** or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of an official traffic-control device or any railroad sign or signal.

\* \* \* \* \* \*

(c) No person shall place or maintain a flashing light or flashing electric sign of any kind or color within one thousand (1,000) feet of any intersection unless a permit is granted by the State Highway Commission for such flashing light or electric sign.

\* \* \* \* \* \*

(e) In addition to being a misdemeanor as set out in Section 143, every such prohibited sign, signal, light or marking is hereby declared to be a public nuisance and the authority having jurisdiction over the highway is hereby empowered to remove the same or cause it to be removed without notice.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 36(a), (c), and (e) (Vernon 1977).

The officers did not display or maintain any devices purporting to be imitations of official traffic-control devices. The items placed on the highway, approximately ten traffic cones, were not placed there to direct traffic or otherwise interfere with the stop sign, but were only placed there to warn the approaching traffic to be alert for the situation ahead. While Dale Smith, employed by American Protective Services and assigned to the Celanese plant, did give the officers a "Kojak" light, i.e., a blinking red light for the

top of a car, there is no evidence that the light was used or if used, was placed within a thousand feet of the road. Further, we believe that section 36(c) was intended to prevent roadside distractions, not to preclude warning devices or traffic control devices.

Section 36 specifically deals with **devices** used to control traffic. It does not concern the use of police officers, or other personnel for that matter, using hand signal and voice commands to control or direct traffic. Since neither the officers nor Celanese violated section 36, there was no nuisance and no misdemeanor committed.

Section 37 states:

No person shall without lawful authority attempt to or in fact alter, deface, injure, knock down, or remove any official traffic-control device or any railroad sign or signal or any inscription shield or insignia thereon, or any other part thereof.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 37 (Vernon 1977).

Neither the officers nor Celanese violated this section. They did not alter, deface, or otherwise injure the stop sign contained at the intersection.[5]

We hold that the officers were independent contractors and on that basis, Celanese cannot be held liable for their negligence. Celanese's first point of error is sustained.

In point of error nine, Celanese first contends that the evidence is legally insufficient to support the jury's answers to questions one, three, four, and five. Celanese also claims the evidence is factually insufficient to support the jury's answers to questions one through five.[6]

**5.** Though Compton alleged a violation of article 6701d in his petition, he did not request or receive a jury question on this issue. Even if we found that the general question on negligence was sufficient to encompass this allegation, the evidence in the record is legally insufficient to support such a finding that the statute had been violated. The only evidence in support of a violation of article 6701d was testimony by a security officer for Celanese that he had given the officers a flashing light; however, there was no evidence the officers used this light or if they did, that it was placed within a thousand feet of a public road. There was also evidence that the officers used ten traffic cones to warn drivers of the situation ahead. We hold that the use of

these cones is insufficient to violate the terms of the statute because they were not used to direct traffic, rather to warn drivers of the situation ahead.

**6.** Celanese also complains about the sufficiency of the evidence in regards to questions seven through ten. However, it is unnecessary to review these contentions because these questions were contingent on the jury's answers to other questions and were mistakenly answered by the jury contrary to the trial court's instructions. When the trial court learned of this it sent the jury back and instructed them to re-read the instructions. After doing so, the jury appropriately left these question unanswered.

In light of Celanese's complaint and our holding in point of error number one, some of the challenges presented in this ninth point of error are redundant. First, Celanese challenged the status of the officers in its first point of error and we held that the officers were independent contractors. Therefore, it is unnecessary for us to review the jury's answers to questions four and five, which asked whether officers Lawrence and Currie were Celanese employees. Our holding under point of error one, that the officers were independent contractors, obviates the need to address whether they were employees. Further, because the officers were independent contractors, Celanese cannot be liable for their negligence under these facts. Thus, we turn to Celanese's challenge to question number one as it relates to Compton's claim that Celanese was independently negligent, and Celanese's challenge to question number three which asked whether the activities of the defendants rendered the highway impassable or travel thereon inconvenient or hazardous.

■ Using the standard set out earlier in this opinion concerning the proper review for challenges to the legal sufficiency of the evidence, we will first review Celanese's claim that the evidence is legally insufficient to support the finding that Celanese committed negligence separate from that of the police officers. Compton claimed at trial that Celanese was negligent in failing to conduct a study or inquiry into minimal safety requirements or procedures for traffic control in the intersection. Further, he claimed that Celanese failed to provide the necessary equipment and personnel needed to regulate traffic safely in the intersection, and failed to inquire into the qualifications of the officers engaged to direct traffic. Compton argues that the jury could have found Celanese negligent on these grounds, i.e., separate and apart from any negligence committed by the officers that might be imputed to Celanese.

In support of his claims, Compton presented the expert testimony of Dexter Jones, a consulting traffic safety engineer. Jones was an engineer who had worked for the Texas Highway Department for over thirty years.

Jones first testified that Celanese could have hired a consulting firm, such as his, to study the intersection to determine the equipment and personnel necessary to regulate the traffic. Several Celanese employees testified, on cross-examination, that no study or survey was conducted prior to the employment of the police officers. However, there was no testimony stating that the failure to conduct such a study was negligent. We are not persuaded that a company is required to conduct a traffic control study regarding equipment and personnel before it hires peace officers who are trained and authorized by law to direct traffic.[7]

Jones testified that at Compton's request, he studied the intersection. He determined that in order to safely direct traffic at the intersection certain pieces of equipment were required: (1) flashing lights placed "a considerable distance" from the intersection; (2) reflective signs, e.g., "BE PREPARED TO STOP" signs; (3) large traffic cones; (4) reflective vests; (5) "SLOW/STOP" paddles; (6) traffic wands or flags; (7) walkie-talkies; and (8) "FLAGGER" signs. He testified, based on a diagram he drew in court, where the equipment should have been placed based on the speed limit. The officers in this case only had their reflective vests and a few traffic cones.

■ Traffic regulation is a governmental function. Tex.Civ.Prac. & Rem.Code Ann. § 101.0215(a)(21) (Vernon Supp.1994). Local governing authorities, i.e., cities, towns, coun-

7. Companies with parking lots or garages that empty onto busy streets commonly hire off-duty peace officers to direct traffic at these congested spots. Were we to hold Celanese negligent for failing to conduct a study of the intersection to determine personnel and equipment needs, this would discourage the customary practice of companies to provide officers for traffic control. Discouraging this practice could result in an increase in personal injuries and property dam-

ages. Furthermore, it would be ludicrous to require a company to hire experts to study traffic control when this is the very reason they hire peace officers, who are trained and authorized to direct traffic. This essentially would require companies to hire consulting experts to determine whether the acting experts are doing their job properly, or risk liability for the acting expert's negligent performance.

ties, etc., have authority and control over their roads to regulate traffic on those roads. *See* TEX.REV.CIV.STAT.ANN. art. 1016 (Vernon Supp.1994); TEX.REV.CIV.STAT.ANN. art. 6701d, §§ 12, 23, and 27(a)(2) (Vernon 1977); TEX.REV.CIV.STAT.ANN. art. 6702–1, §§ 2.301 and 2.303 (Vernon Supp.1994). Peace officers, which include city police officers, *see* TEX.CODE CRIM.PROC.ANN. art. 2.12(25) (Vernon Supp.1994), are employed by these local governing bodies and have the authority to direct traffic. *See* TEX.REV.CIV.STAT.ANN. art. 6701d, § 23(a) (Vernon Supp.1994) (section 23 states: "no person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic."). Since the regulation of traffic is a governmental function and Texas law gives the authority to regulate traffic direction to the state and local government, only governing authorities and their agents are entitled to regulate traffic on public roadways. Private entities have no authority to regulate or direct traffic on public roads.

The fact that the officers in this case were off-duty is of no consequence. Other than arrests by off-duty officers in the criminal context, we have found no Texas cases specifically addressing an off-duty police officer's authority; however, the courts of this state have noted the common practice of private companies employing off-duty police officers to direct traffic or provide security. *See Barefield v. City of Houston*, 846 S.W.2d 399, 402 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (producer of rock concerts hired off-duty Houston police officers for security); *see also Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 626 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (hotel hired off-duty police officers to bolster hotel's security force); *Wood v. State*, 486 S.W.2d 771, 774 (Tex.Crim.App.1972) (private corporation hired two uniformed off-duty police

officers to direct traffic out of corporation parking lot onto public street); *Monroe v. State*, 465 S.W.2d 757, 759 (Tex.Crim.App. 1971) (nightclub hired uniformed off-duty officer as bouncer); *Coleman v. Manuel*, 244 S.W.2d 256, 257 (Tex.Civ.App.—Austin 1951, writ ref'd n.r.e.) (movie theater hired two off-duty police officers to direct traffic in and out of theater).[8]

Because only police officers, whether on or off duty, or others designated by the local authorities, have the authority to direct traffic, Celanese, a private corporation, was not authorized to regulate traffic on the highway in front of the plant.[9] In fact, as Compton pointed out, if Celanese had attempted to place traffic devices on the highway, as Dexter Jones testified was necessary, it would have been in violation of art. 6701d, § 37. We find Jones' testimony concerning alleged acts or omissions by Celanese is speculative and amounts to no evidence.

 Compton's claim that Celanese was negligent in failing to investigate the officers it hired to direct traffic is likewise without merit. Though Celanese did not inquire into the specific training of the officers before hiring them, it did so with justifiable confidence. These officers were certified Texas peace officers. Officer Lawrence and Currie testified that they were trained in traffic control while studying to be police officers and they were taken into the field during training to learn traffic control. They were admitted to the ranks of the police force because they had obviously learned the duties they were to carry out, one of which was traffic control. While Officer Currie did testify that she had not yet conducted any traffic control as part of her police duties, she did not testify that she was unable to direct traffic.

---

8. Our opinion that off-duty officers are authorized to direct traffic is reinforced by the testimony in this case. Officer Lawrence testified that the department requires officers to get permission before they take off-duty jobs. Permission in this case was granted, therefore, the police department must have believed it was not illegal for the off-duty officer's to direct traffic on a public road.

9. The testimony in the record shows that Celanese first went to its own security office and asked that its security officers direct traffic in front of the plant. Security personnel correctly informed Celanese that they did not have the authority to direct traffic on the highway and Celanese would have to hire police officers for the job.

As experts, the officers should have known, and perhaps did know, what equipment was necessary to control the intersection. Officer Lawrence made only one request for equipment, for walkie-talkies. When he was told that Celanese did not have any, he replied that the officers would provide them. We find no negligence on the part of Celanese in failing to determine what equipment was necessary. There is no evidence to support any alleged acts of negligence, separate and apart from the negligence of the officers, by Celanese.

Celanese also complains in point of error nine that there is no evidence to support the jury's answer to question number three. That question asked whether the activities of Celanese, Officer Lawrence, or Officer Currie rendered the highway in front of the plant impassable or rendered passage thereon unreasonably inconvenient or hazardous. The jury answered yes as to all three defendants.

Looking only at the evidence that support the jury's answer to question number three, we find that the evidence is legally insufficient to support the answer as to Celanese.[10]

The question submitted by the trial court tracks the language contained in section 42.03 of the Texas Penal Code, entitled "Obstructing Highway or Other Passageway." The section states, in pertinent part:

(a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:

(1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others;

\* \* \* \* \* \*

(b) For purposes of this section, **"obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.**

(c) An offense under this section is a Class B misdemeanor.

TEX.PENAL CODE ANN. § 42.03 (Vernon 1989). [emphasis added]

Officer Currie testified that the intersection was dangerous because of the 50 m.p.h. speed limit; however, she did not testify that anything that the officers did or that Celanese did on that day rendered the highway impassable or passage on the highway unreasonably inconvenient or hazardous. There was absolutely no evidence presented to support the jury's finding that Celanese's activities on the day of the accident rendered the highway impassable or travel thereon inconvenient or hazardous.

The evidence is legally insufficient to support a finding that any individual acts committed by Celanese were negligent. Also, there is no evidence to support the jury's answer to question number three. These portions of Celanese's ninth point of error are sustained.

Based on our holdings in points of error one and nine, it is unnecessary to review the remaining points brought by Celanese. The trial court's judgment as to Celanese is reversed, and judgment is rendered that Compton take nothing against Celanese.[11]

ELLIS, Justice, dissenting.

I respectfully dissent and would uphold the jury's verdict and the trial court's judgment awarding damages to Compton.

I disagree with the majority opinion in several respects. First, I would hold that

---

10. Since Officer Currie was nonsuited, Officer Lawrence has not appealed, and we have held that the officers were not employees of Celanese, it is only necessary that the we consider the jury's answer as to Celanese.

11. We wish to point out that Celanese was the only party to appeal from the trial court's judgment, and the only portion of the judgment appealed was Compton's claims against Celanese. Because we have reversed and rendered in favor of Celanese, it is no longer liable to Compton, either individually or joint and severally. That portion of the judgment rendered against Kevin Lawrence individually was not appealed and therefore is undisturbed by any holding in this opinion.

the trial court was correct in submitting the issue of whether the officers were independent contractors or employees to the jury, and the jury's finding that the officers were employees was supported by sufficient evidence.

As the majority correctly recites, an independent contractor is one who, in the pursuit of an independent business, does specific work for others while using his own means and methods. *Living, Inc. v. Redinger*, 667 S.W.2d 846, 855 (Tex.App.—Houston [1st Dist.] 1984), *rev'd on other grounds*, 689 S.W.2d 415 (Tex.1985). An independent contractor performs this work without submitting himself to the control of the person for who the work is being done. *Id.* When the five factors from *Newspapers Inc. v. Love*, 380 S.W.2d 582, 591 (Tex.1964) are used to determine the amount of control retained by Celanese over the police officers, the evidence is sufficient to support the jury's finding that the officers were employees rather than independent contractors.

Celanese controlled the time that the officers were to be present and direct traffic in and out of the plant. Celanese specifically instructed the officers as to where the traffic control should take place. The company instructed the officers that they were to wear their police uniforms to the job site. The officers were paid by check, from Celanese, for each hour they worked. They were required to submit time sheets in order to get their checks; much like any hourly employee. Celanese retained the right to fire the officers; a right they exercised after the accident. Lastly, while the majority is correct when it states that Officer Lawrence never specifically testified that he was hired as an employee, he did state that he was never told that he was being hired as an independent contractor. This was confirmed by Ms. Lott, the Celanese employee responsible for finding the officers needed to direct traffic. The tone of this testimony could have suggested to the jury that the officers were Celanese employees.

There was ample evidence for the jury to find that the officers were Celanese employees. The jury is the judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A court of appeals may not substitute its opinion for that of the jury merely because it might have reached a different conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Thus, I would overrule appellant's first point of error.

Second, even if the officers were independent contractors, I would hold that the jury's negligence finding should be upheld based on the argument that traffic control is inherently dangerous. Generally, a person or entity is not liable for the acts of an independent contractor; however, there are exceptions to this rule. *See* 44 Tex.Jur.3d *Independent Contractors* § 24 (1981). For example, if the work to be performed by the independent contractor is inherently dangerous, the duty of care cannot be delegated to an independent contractor. *Cage v. Creed*, 308 S.W.2d 78, 80 (Tex.Civ.App.—Waco 1957, no writ). While I have found no Texas cases specifically holding that traffic control or traffic direction is inherently dangerous, it seems to me that a standing out on a 50 m.p.h. hour highway trying to control traffic is at least as dangerous as an excavation in a public road. *See id.* Thus, I would hold that Celanese cannot escape liability because it cannot delegate its duty of care as to traffic control.

Lastly, the evidence was sufficient for the jury to have found that Celanese committed independent acts of negligence, i.e., it acted negligently, apart from any actions by the officers. At trial, Compton claimed that Celanese was negligent: (1) in failing to conduct a study or inquiry into the minimal safety requirements or procedures necessary for safe traffic control in the intersection; (2) in failing to provide the necessary equipment and personnel needed to regulate traffic in a safe manner; and (3) in failing to inquire into the qualifications of the officers hired to direct traffic. In support of these claims, Compton presented the expert testimony of Dexter Jones.

Jones was a traffic safety engineer with the Texas Department of Transportation (the Texas Highway Department) for over 30 years. His duties at the department includ-

ed determining the safety requirements of either the State or other entities before any action was taken to alter traffic flow on public roadways. In other words, before the State decided to put up new traffic signals or other traffic control devices, Jones would conduct studies to determine the safest way to proceed. Jones now owns a private consulting firm.

Jones conducted a study of the intersection in this case and concluded, based on his expert opinion, that the minimum traffic safety requirements necessary to safely interrupt the flow of traffic at the intersection were absent. He testified that in order to safely direct traffic at the intersection one would need, at a minimum:

(1) Flashing lights placed at a distance from the intersection to warn drivers to be alert for a change ahead;

(2) Reflective signs, e.g., "Be prepared to stop;"

(3) Traffic cones much larger and in greater numbers than those provided by Celanese;

(4) Reflective vests;

(5) "Slow/Stop" paddles for the officers;

(6) Traffic wands or flags;

(7) Walkie-talkies; and

(8) "Flagger" signs.

He told the jury how the equipment should have been used based on the 50 m.p.h. speed limit. The evidence showed that the only equipment used by the officers were ten small traffic cones, and Jones stated they were not properly positioned, and reflective vests.

Jones testified that Celanese could have hired a consulting firm to determine what was necessary for safe traffic control for approximately $75.00 an hour. The evidence showed that Celanese did not hire a consulting firm and did not provide the equipment necessary for safe traffic control. Thus, the jury could have found that Celanese was negligent in failing to properly assess the situation and in failing to provided the proper traffic control equipment.

Further, it was undisputed that Celanese did not check the qualifications of the officers it hired. In fact, it never knew from day to day which officers would be at the job site. Officer Currie specifically stated that while she had some training in traffic control, she had never conducted traffic control as a part of her police duties. Thus, the jury could have found that Celanese was negligent in failing to adequately check out the officers.

I would affirm the judgment of the trial court based on the jury's verdict.