T.C. Memo. 1996-526


UNITED STATES TAX COURT


JEFFREY S. KAISER AND GAIL F. KAISER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22283-94.                Filed November 27, 1996.


<u>Lawrence R. Jones, Jr.</u>, for petitioners.

<u>Audrey M. Morris</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and

182.[1]  Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $1,121.

The issue for decision is whether certain income earned by Jeffrey S. Kaiser constitutes earnings from self-employment within the meaning of section 1402, subject to tax imposed by section 1401.

## FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.  Petitioners filed a joint Federal income tax return for the year 1991 (the 1991 return).  Jeffrey S. Kaiser resided in Dallas, Texas, and Gail F. Kaiser resided in Mesquite, Texas, at the time that the petition was filed in this case.  References to petitioner are to Jeffrey S. Kaiser.

Petitioner has been employed as a police officer on a full-time basis by the Dallas Police Department (the Department) since 1981.  During the year in issue he held the rank of sergeant. In order for an individual to obtain employment as a police officer in Texas, he or she must satisfy various requirements established by Texas law, which include being issued a warrant of appointment from a governmental entity authorized to do so.

As a Dallas police officer, petitioner was subject to the Department's rules and regulations published in general orders

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

and standard operating procedures. The general orders and standard operating procedures included not only the policies and practices of the Department that Dallas police officers were bound to follow in connection with their official responsibilities, but also contained a code of conduct that Dallas police officers were bound to honor whether on-duty or off-duty. If an off-duty police officer engages in a law enforcement activity, such as making an arrest in connection with a crime committed in the officer's presence, the officer's status changes from off-duty to on-duty while the officer is engaged in the law enforcement activity. In this regard, Dallas police officers are subject to the Department's general orders and standard operating procedures on a 24-hour-per-day basis. The general orders and standard operating procedures apply to certain aspects of a Dallas police officer's personal life, such as the conditions under which the police officer is permitted to accept, or engage in off-duty employment. Violating a general order or standard operating procedure could result in disciplinary action against the police officer.

Occasionally, private businesses or individuals (third-parties) require the services of off-duty police officers for traffic control, security, or other police-type services. A Dallas police officer is not permitted to engage in off-duty employment unless he or she first receives approval from the Department. The Department maintains a roster of officers who

are interested in off-duty employment. To obtain the services of an off-duty Dallas police officer, the third party may call the Department, or directly contact an officer about off-duty employment, although Dallas police officers are not permitted to commercially advertise their availability for off-duty employment. If the Department's approval has been obtained, the decision to accept, or engage in off-duty employment is within the discretion of the police officer. The Department imposes no obligation on its police officers to do so.

The general orders provide the process that a Dallas police officer must go through in order to obtain such approval. The process differs depending upon whether the off-duty employment involves police-type services or other types of services.[2] In either event, approval or denial of the application or request depends upon various considerations, some relating to the police officer and others to the nature of the employment.[3]

---

[2]With respect to police-type services, a Dallas police officer must submit an "Application for Special Duty". This application is subject to renewal and review on a monthly basis. To engage in outside employment not involving police-type services, the officer must submit a "Request for Permission for Outside Employment, Other Than Police Duty". After initial approval, the request is subject to renewal and review twice a year.

[3]In reviewing applications and requests for off-duty employment, Department supervisors consider: Whether the off-duty employment entails an excessive number of working hours in a 24-hour period; whether the off-duty employment would interfere

(continued...)

During 1991 petitioner, after receiving permission from the Department to do so, provided off-duty police-type services to Presbyterian Hospital of Dallas, Northpark Mall, and the Parking Company of America (the companies). Petitioner voluntarily accepted off-duty employment with these companies; he was not obligated to do so as a Dallas police officer. The Department did not direct him to accept such employment, and would not have disciplined him if he chose not to do so. He could quit working for, or be terminated by, these companies at any time. Petitioner's off-duty work schedules were based upon the needs of

---

[3](...continued)
with the officer's assigned duties; the officer's attendance and productivity records; the frequency of complaints against the officer; whether the place of work is frequented by felons; whether the nature of the work would bring discredit to the Department; and whether the off-duty employment is political, morally questionable, involves religious issues, conflicts with police objectives, or is detrimental to the Department.

Permission for off-duty employment is normally denied if, for example, the officer is in training; the work is outside of Dallas city limits; the officer is on limited duty status; the principal business of the company involves the dispensing of alcoholic beverages; the officer's supervisor determines the work would limit the officer's effectiveness in discharging his official duties; the work involves collecting bills or checks; the work involves domestic difficulties; the work is for an entity or company engaged in a labor dispute or political controversy such that the officer's employment may be considered an endorsement or condemnation by the Department of a position of either party in a controversy; the work is for a public utility corporation holding a franchise from the city; or the work involves surveillance for a private security company, investigative agency, or an individual. The Department may terminate its approval of an officer's off-duty employment if any of these conditions arise after the fact.

If an officer fails to comply with the provisions of the general orders, his or her supervisor may deny, suspend, or restrict the off-duty employment privileges of the officer.

the companies, taking into consideration petitioner's on-duty hours. The amount and method of petitioner's compensation were agreed upon between each company and petitioner, without involvement by the Department. When petitioner performed services for these companies, he wore his official uniform and carried police-issued equipment such as handcuffs, gun, and night stick. The income that petitioner received from the companies was not taken into account in the computation of the pension benefits to which he was entitled as a Dallas police officer.

During 1991, in addition to the income that petitioner earned from the Department, he received compensation from the companies in the following amounts:

| | |
|---|---|
| Presbyterian | $2,370 |
| North Park | 10,330 |
| Parking Company | 76 |

The companies considered petitioner an independent contractor and reported the compensation paid to him on Forms 1099-MISC. Petitioners included the above compensation in the amount they reported as wages on their 1991 return. The Federal income tax liability that petitioners reported on their 1991 return did not include any amount attributable to the self-employment tax imposed by section 1401.

In the notice of deficiency respondent determined that the compensation petitioner received from the companies was subject to the self-employment tax and computed the deficiency here in dispute accordingly. Respondent's determination is based upon

her conclusion that such compensation constitutes earnings from self-employment within the meaning of section 1402.

OPINION

In addition to other taxes, section 1401 imposes a tax upon an individual's self-employment income. This tax is commonly referred to as the self-employment tax. Ignoring exceptions not applicable to this case, section 1402(b) defines self-employment income as net earnings from self-employment. Disregarding irrelevant exceptions and inclusions, net earnings from self-employment consist of the gross income derived by an individual from any trade or business carried on by such individual, less the allowable deductions that are attributable to such trade or business. Sec. 1402(a). However, the self-employment tax generally does not apply to compensation paid to an employee by an employer. Sec. 1402(c)(2) and (3).

Petitioners contend that petitioner provided police-type services to the companies as an employee of the Department, not as an independent contractor.[4] Consequently, according to petitioners, the compensation that petitioner received from the companies is not subject to the self-employment tax. Respondent's determination to the contrary, having been made in a notice of deficiency, is presumptively correct, and petitioners

_____

[4]Petitioners have expressly taken the position that petitioner was not an employee of any of the companies during the year in issue. Respondent apparently agrees, and we do not consider this point in our opinion.

bear the burden of proving otherwise.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Whether an individual is compensated as an employee or an independent contractor is normally considered a factual question, the resolution of which is dependent upon the application of certain common-law principles to the circumstances of the particular situation.  Sec. 1402(d); sec. 3121(d)(2); sec. 31.3401(c)-1(d), Employment Tax Regs.; <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318 (1992); <u>Professional Executive Leasing, Inc. v. Commissioner</u>, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988).

Petitioners first argue that as a matter of State law petitioner must be considered an employee of the Department with respect to the compensation he received from the companies.  In support of this argument petitioners presented an explanation of the process that an individual must go through in order to qualify for employment as a police officer in Texas.  Based upon our review of the Texas statutes called to our attention in petitioners' brief, it appears that petitioners have accurately outlined the process.  While we agree with petitioners that an individual cannot be employed as a police officer unless the relevant statutory scheme has been satisfied, we fail to see how establishing this point advances petitioners' position in this case.  Petitioners' argument is based upon their erroneous assumption that petitioner was employed by the companies as a

police officer. Obviously, the companies were not authorized to issue warrants of appointment, a necessary event in order for an individual to qualify for employment as a police officer in Texas. However, petitioner was hired by the companies to provide police-type services, not as a police officer, although being an active police officer might have been a necessary qualification for the jobs. Merely because the companies could not appoint and hire petitioner as a police officer, does not mean that he could not be hired as an independent contractor. In Texas, a police officer can be an employee of a police department and, during his or her off-duty hours, provide police-type services as an independent contractor to third-parties. Cf. Hoechst Celanese Corp. v. Compton, 899 S.W.2d 215 (Tex. Ct. App. 1994); City of Dallas v. Half Price Books, Records, Magazines, Inc., 883 S.W.2d 374 (Tex. Ct. App. 1994); Tex. Rev. Civ. Stat. Ann. art. 4413(29bb), sec. 3(a) (West Supp. 1996).

Petitioners next argue that because petitioner was in uniform while working for the companies, he was acting in his capacity as a police officer, and as such could only be considered an employee of the Department. Petitioners cite Wood v. State, 486 S.W.2d 771 (Tex. Crim. App. 1972); Monroe v. State, 465 S.W.2d 757 (Tex. Crim. App. 1971); Thompson v. State, 426 S.W.2d 242 (Tex. Crim. App. 1968), in support of this argument. Our reading of these cases differs significantly from petitioners'. These cases merely confirm a point that is not in

dispute in this case, namely, that the status of a police officer changes from off-duty to on-duty if, while off-duty, the officer observes criminal conduct and engages in a law enforcement activity in response to such conduct. This change in status occurs, however, regardless of whether the police officer is engaged in providing police-type services to a third party, or is merely off-duty and happens to be in an area where and when his or her services are required. This change in status has no bearing on whether a Texas police officer is prohibited as a matter of law from earning and receiving compensation as an independent contractor.

Petitioners also argue, as a matter of fact, that under the common-law principles relevant to such determinations, the level of control that the Department exerted over the services that petitioner provided to the companies renders him an employee of the Department with respect to such services.[5]

_____

[5]The relevant factors in determining the characterization of an employment relationship include: (1) The degree of control exercised by the principal over the details of the work; (2) the payee's investment in facilities; (3) the payee's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) whether nonmonetary benefits are involved. NLRB v. United Ins. Co., 390 U.S. 254, 258-259 (1968); Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975); Feivor v. Commissioner, T.C. Memo. 1995-107. No one factor is determinative; rather all the incidents of the relationship must be assessed and weighed. NLRB v. United Ins. Co., supra at 258.

We have previously considered a similar argument presented in the context of an identical issue in March v. Commissioner, T.C. Memo. 1981-339.  In that case we acknowledged that the issue is "not free from doubt", but held that the income earned by the taxpayer, a Miami police officer, from off-duty employment was subject to the self-employment tax imposed by section 1401.  We based our holding in March primarily upon a finding that the police department's control, which we characterized as "incidental", over the taxpayer's off-duty jobs was not sufficient to support a conclusion that the taxpayer was an employee of the police department with respect to the off-duty jobs.  The control that the Miami Police Department had over the taxpayer's off-duty employment in March is similar, in source, nature, and consequence to the control that the Department had over petitioner's off-duty employment in this case.  As we observed in March v. Commissioner, supra n.16:

> Petitioner correctly points out that the Department did wield and exercise a large degree of control over off-duty employment in that all such employment had to meet its approval.  However, it is important to keep in mind that two types of jobs (on-duty jobs and off-duty jobs) exist simultaneously in this case.  There is no dispute that an employer-employee relationship existed between petitioner and the Department with respect to his regular, on-duty job.  In our opinion, the control vested in the Department with respect to off-duty employment relates solely to this on-duty, employer-employee relationship. It does not represent the Department's attempt to control the details of the off-duty employment.  For example, Department approval of off-duty employment is directly attributable to the Department's desire to ensure the absence of any interference with an

officer's on-duty activities and to preserve the Department's image.  This type of broad control is qualitatively different from the type of direct, operational control implicit in the employer-employee relationship.  See Party Cab Co. v. United States, 172 F.2d 87, 92-93 (7th Cir. 1949).  Similarly, we recognize that petitioner's off-duty activities may have been constrained by Department rules and regulations.  The general application of those rules, however, relates to petitioner's status as a member of the Department and is not specifically aimed at controlling the details of petitioner's activities while working * * * [off-duty].  For example, the mere fact that petitioner might be reprimanded by the Department if he abandons his off-duty job without notice does not necessarily mean the Department controls his off-duty employment activities.  Rather, any conduct unbecoming a police officer, such as abandoning a job, would presumably violate the Department's rules and regulations whether such conduct related to off-duty employment or not.

As in March, the incidental control that the Department had over petitioner's off-duty employment is simply not sufficient to support a finding that petitioner performed the off-duty services for the companies as an employee of the Department.

Nothing has been presented in this case that persuades us to depart from our reasoning in March.  The facts in March are so similar to the facts in this case that different results would not be justified.

Furthermore, we find petitioner's apparent obligation to accept on-duty assignments to be in sharp contrast to the absence of any such obligation with respect to off-duty employment.  The Department had absolutely no control over petitioner with respect to his decision to decline suitable employment offers from third parties.  The Department's lack of control over this aspect of

petitioner's off-duty activities severely undermines petitioners' position in this case.  Consequently, and for the reasons expressed in <u>March v. Commissioner</u>, <u>supra</u>, we hold that the earnings here in dispute were not received by petitioner as an employee of the Department, but constituted earnings from self-employment within the meaning of section 1402, subject to the tax imposed by section 1401.

    To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.