**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-20810

_____

BOBBY HATHCOCK,

Plaintiff-Appellant,

versus

ACME TRUCK LINES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
_____

September 6, 2001

Before JOLLY, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Hathcock seeks reversal of the district court's grant of summary judgment in favor of Defendant-Appellee Acme Truck Lines, Inc. ("Acme"). Because we find Hathcock, in his capacity as a truck driver, was an employee of Acme at all pertinent times, we affirm the district's court grant of summary judgment.

I.

FACTS AND PROCEEDINGS

Acme transports equipment, materials, and supplies throughout the country. Hathcock, pursuant to a written agreement (the "lease agreement") leased his truck to Acme. The third paragraph of the lease agreement contains the provision central to this case:

> "As consideration for the use of the Leased Equipment...Lessee [Acme] agrees to pay Lessor [Hathcock] (70%) percent of the "Earned Revenue derived by the Lessee from the Leased Equipment [Hathcock's truck],"...less driver's wages; payroll taxes (including FICA and other deductions); cost of medical or hospitalization insurance, if applicable;...and such other costs or payments made by Lessee by reason of driver employment and less any "Operating costs and expenses,"[defined in detail, and not contested, in the fifth paragraph of the lease agreement]...which are incurred by Lessee in connection with the use and/or operation of the Leased Equipment for which Lessor shall be responsible" (emphasis added).

Acme accorded Hathcock the option of choosing and designating the driver of the truck he leased to Acme or allowing Acme to supply the driver for his truck.

Exercising his option to choose the driver of his truck, Hathcock selected himself. Pursuant to another provision of the lease agreement, he allocated ten percent (10%) of his Lessor's revenue to driver's wages. In keeping with its company policy, Acme informed Hathcock that he would be paid by two separate checks —— one to him as lessor for the lease of his truck ("rental check") and the other to him as the designated driver of that truck ("paycheck"). In another memorandum, Acme informed Hathcock of the

2

fixed percentage of the driver's wages that it would deduct from the rental check to cover those driver— and employee— related costs detailed in the lease agreement's above-quoted third paragraph as chargeable to the lessor.

Eventually, Hathcock terminated the lease agreement. He then filed suit against Acme in Texas state court, asserting various causes of action including fraud, breach of contract, conversion, and unjust enrichment. Acme removed the case to the United States District Court for the Southern District of Texas. After the parties filed cross motions for summary judgment, the district court granted Acme's motion and denied Hathcock's. After his Motion for Reconsideration was denied, Hathcock timely filed a notice of appeal.

## II.

## DISCUSSION

### A.  Standard of Review

We review a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the district court.[1]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[2]  An issue is material if its resolution

---

[1]  <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).

[2]  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

3

could affect the outcome of the action.[3]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[4]

The standard for summary judgment mirrors that for judgment as a matter of law.[5]  Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[6]  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[7]

## B.  Hathcock's Dual Capacity as Lessor and Driver

Hathcock bases his claims on the proposition that Acme and only Acme is responsible for FICA, FUTA, and SUTA taxes.[8]

---

[3]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[4]  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[5]  Celotex Corp., 477 U.S. at 323.

[6]  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

[7]  Id. at 151.

[8]  FICA refers to Social Security or Federal Insurance Contribution Act taxes.  FUTA refers to Federal Unemployment Tax Act taxes.  SUTA refers to the state analogues of the FUTA taxes. In the case at bar, SUTA will refer to both the Texas and Louisiana counterparts to FUTA.

4

Therefore, contends Hathcock, Acme's deductions from his rental check to help defray its costs for those taxes were unlawful. The legality of the payment system employed by Acme depends in large part on its statutory and contractual ability to treat Hathcock as an owner-lessor for some purposes while treating him as an employee for others.

Hathcock does not contend that if he had selected and designated a third party to drive his truck for Acme, that driver would not have been lawfully and properly deemed an employee of Acme and paid directly by Acme and not by Hathcock. Neither does he contest that if such had been the case Acme would have been entitled to deduct from Hathcock's rental check all employee costs designated as such in the lease agreement. Hathcock's sole contention here is that everything changes when the individual who leases his truck to Acme drives it himself, i.e., that employee costs incurred by Acme when the lessor drives cannot be charged back against that person, wearing his lessor's hat.

In diametric opposition, Acme insists that it is entitled to treat Hathcock the same way when he drives the truck that he leased to Acme as it would treat a third-party driver chosen by Hathcock. Thus, Acme insists, it was entitled to pay him with two checks, one for each of his roles, and to deduct the contractually specified employee costs from his rental check. Acme uniformly treats all truck drivers — including those who own their trucks and lease

5

them to Acme —— as employees, paying them by payroll checks from which the employees' portions of federal income, state income, and social security taxes are withheld. In contrast, Acme treats all lessor-owners —— including those who choose to drive their leased-out trucks —— as independent contractors, paying them by rental check from which are deducted the lessor-designated driver's wages plus a percentage thereof to cover the employer's share of payroll taxes and other employer-related costs incurred by Acme.

Because most of Acme's lessor-owners do not choose to drive their own trucks, Acme's two-check system is the norm, and is commercially logical as well. As suggested by a venerable case from this court and by a decision from the Texas Workers' Compensation Commission as well, Acme's application of its two-check, dual-capacity system to Hathcock is proper:[9] Acme may simultaneously treat him as an owner-lessor and as a driver-employee. Hathcock had the option either to drive the truck himself or to select a third-party driver, and the lease agreement

---

[9] See Helms v. Sinclair Refining Co., 170 F.2d 289, 291 (5th Cir. 1948) ([T]here is not necessarily such repugnance between them that both relationships [that of independent contractor-employer and that of master-servant] could not exist at the same time in connection with different phases of the work. An employee might be an independent contractor as to certain work and a mere servant as to other work not embraced within the independent contract."); see also, Rakowitz v. Zurich American Ins. Co., Docket No. SA/98-107023/01-CC-SA45 (Tex. Workers' Comp. Comm'n 1999) (deciding that the deceased occupied dual roles of lessor and driver with Acme and that on the day of his accident, he was acting as a lessor and therefore could not recover benefits due to him as an employee).

6

clearly contemplates the lessor/driver dichotomy. When Hathcock elected to drive the truck himself, he donned a second hat.

C. Hathcock's Status as an Employee

Hathcock argues that he was an independent contractor at all times and was never Acme's employee. Acme, on the other hand, maintains that when Hathcock elected to serve as a truck driver, he became Acme's employee despite his continued role as the independent contractor/lessor of the truck. The district court, in granting summary judgment in Acme's favor, was satisfied that the facts, viewed in the light most favorable to Hathcock, established that he was an employee when he drove the truck leased to Acme. We agree with this determination of the district court.

Hathcock's capacity vis-à-vis Acme when he drove the truck is material. If he were Acme's employee, then he created a portion of Acme's FICA, FUTA, and SUTA tax liability, making Acme's withholdings from Hathcock's driver paycheck not merely proper but mandated by state and federal tax law. Conversely, if Hathcock were an independent contractor when wearing his driver's hat, withholding monies from his rental check to cover Acme's employee expenses would have been improper. In fact, if Hathcock were an independent contractor when he drove, Acme would not have been responsible for withholding and remitting income, FICA, FUTA, and SUTA taxes because Acme is required to do that for its employees only.

7

Courts have developed various tests to differentiate employees from independent contractors. Case law from both Texas and Louisiana recognizes "the right to control an employee's conduct" as the most important component of the determination.[10] The state appellate court in Hoecsht Celanese Corp. v. Compton explained that Texas courts analyze five factors in determining the employer's degree of control: (1) the independent nature of the workman's business; (2) the workman's obligation to furnish necessary tools, supplies, and materials; (3) the workman's right to control the progress of the work except as to the final results; (4) the time for which the workman is employed; and (5) whether the workman is paid by time or by job.[11] Similarly, we have evaluated employment relationships in the context of Title VII and the ADEA by using a hybrid economic realities/common law control test that focuses on whether the alleged employer had the right to hire and fire, the right to supervise, the right to set the work schedule, paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.[12] And, in examining employee status under an FLSA claim, we considered five factors: (1) degree

---

[10] Newcomb v. North East Ins. Co., 721 F.2d 1016, 1017 (5th Cir. 1983) (discussing the Louisiana test); Hoecsht Celanese Corp. v. Compton, 899 S.W.2d 215, 220 (Tex. App. - Houston 1994).

[11] Hoecsht, 899 S.W.2d at 220 (citing Pitchfork Land and Cattle Co. v. King, 162 Tex. 331 (1961)).

[12] Deal v. State Farm County Mutual Ins. Co., 5 F.3d 117, 118-19 (5th Cir. 1993).

8

of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[13]

Under each of the foregoing tests, the instant facts mandate a conclusion that an employer-employee relationship existed when Hathcock drove the truck for Acme, regardless of his contemporaneous ownership of the vehicle and his independent contractor role as its lessor. Acme treated Hathcock as an employee for tax purposes and withheld mandated federal and state income and social security taxes from his driver's paycheck, and paid Hathcock, the driver, a regular salary as an employee. When he drove, the terms and conditions of Hathcock's employment were set by Acme: He had to submit to Acme's medical and driving requirements; he was subject to discipline for violation of Acme's personnel policies, including anti-harassment, drug testing, and 401(k) Plan; he was subject to discharge by Acme for violations of its Driver Manual; he was bound to work exclusively for Acme; and while doing so he had to drive a truck sporting the Acme logo at all times. In addition, Acme covered the costs of advertising,

---

[13] Herman v. Express Sixty-Minutes Delivery Service, 161 F.3d 299, 303 (5th Cir. 1998) (rigorously applying the five factors to the specific facts of the case and stating, "[n]o single factor is determinative.").

employing administrative staff, and soliciting business, including all business for Hathcock. He had no outside or personal customer base; he was "on-call" for Acme at all times; he did not participate in setting prices or rates for his deliveries; and Acme owned all permits and transportation rights required for Acme drivers, including Hathcock. The relationship between Acme and its drivers, including Hathcock, has always been of an indefinite duration. Finally, Acme showed that the IRS conducted an employment tax compliance check in 1996, and found no fault with Acme's accounting, deductions, or treatment of drivers as employees.

Hathcock does not dispute the facts presented by Acme. Instead, he offers only his own deposition testimony expressing his subjective belief that he was an independent contractor and stating that he was treated as such by his CPA. Neither we nor the courts of Texas, however, have allowed a party's otherwise unsupported, conclusional testimony to create a factual dispute sufficient to defeat a motion for summary judgment.[14]

Hathcock's second argument purporting to create a genuine fact

---

[14] See, e.g., Marshall v. East Carroll Parish Hosp., 134 F.3d 319, 324 (5th Cir. 1998) (citing Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations . . . or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.")); Hoecsht, 899 S.W.2d at 221 ("The key inquiry in such a situation is control, not a party's belief as to their status.").

issue is that he possessed significant control over his work as a driver. Under the lease agreement, Hathcock, as a lessor, was allowed to set the driver's wages as a percentage of the lessor's revenue, was authorized to choose a driver and could veto Acme's choice of driver if Hathcock elected not to choose one.[15] As lessor, Hathcock also had the responsibility of maintaining the truck and providing specified services. The flaw in Hathcock's second argument lies in his failure to recognize (or his deliberate blurring of) the distinction between Hathcock, the owner-lessor, and Hathcock, the driver. Even though, as the owner-lessor, he possessed a modicum of control, as a driver he possessed none of consequence.

Although it is virtually indistinguishable from his second argument, Hathcock's third argument for insisting on the existence of genuine issue of material fact is grounded in the jurisprudential definition of an independent contractor. Under both Texas and Louisiana case law, an independent contractor is one who "works according to his own methods without direct supervision or control by the employer except as to the overall result."[16]

---

[15] Acme allows lessors who choose their own drivers to select a percentage, between 10% and 25% of their lessors' revenue, as the drivers' wage.

[16] Newcomb, 721 F.2d at 1017; Hoechst, 899 S.W.2d at 220 ("An independent contractor has been defined as any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods,

Proffering this standard, Hathcock notes that, as driver, he picked his own delivery routes, and Acme did not interfere with "other details" of his performance.

In assessing whether drivers for a courier service were employees or independent contractors, we stated that "initiative, not efficiency determines independence."[17] Hathcock's ability to pick his delivery route and work details does not evince sufficient initiative to allow him to be classified as an independent contractor as a matter of law.

Generally, the worker-status inquiry is fact intensive, and presumption weighs in favor of submission of such inquiries to the jury. The instant case, however, presents a situation that permits only one reasonable conclusion: Wearing his truck driver's hat, Hathcock was Acme's employee.[18]

---

without submitting himself to their control in respect to all its details.") (internal quotations omitted) (citations omitted).

[17] Herman, 161 F.3d at 305 (citing Usery v. Pilgrim Equipment Co., 537 F.2d 1308, 1314 (5th Cir. 1976) ("[R]outine work which requires industry and efficiency is not indicative of independence and nonemployee status.")).

[18] Here, we assume that when driving the truck Hathcock was discharging his driver obligations, including pick-up and delivery of items pursuant to Acme's business. When Hathcock drove his own truck for the limited purpose of discharging his contractual obligation of truck maintenance and service, then he was acting in the capacity of lessor.

D.  Exclusivity of Tax Provisions at Issue

Undeterred, Hathcock argues alternatively that, even if Acme's lessor-drivers are deemed to be its employees, Acme nevertheless violates federal and state law when it deducts money from a lessor-driver's rental check to defray the employer's FICA, FUTA, and SUTA tax expenses.  The tax liabilities created by those provisions, he contends, are the exclusive responsibility of employers.[19]  The relevant provisions, however, do not forbid Acme's practice of charging those employee costs back to its lessors.  Acme expressly deducts from the rental check given to its lessors a fixed percentage of the drivers' wages to recoup its employee-related

---

[19]    Hathcock relies on the following federal and state tax statutes:
26 U.S.C. § 3111:  "Old age, survivors, and disability insurance —— In addition to other taxes, there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ...paid by him with respect to employment..."

26 U.S.C. § 3301:  "There is hereby imposed on every employer...an excise tax, with respect to having individuals in his employ..."

Tex. Labor Code §§ 204.002, 204.003:  "An employer shall pay a contribution on wages for employment paid during a calendar year..."

"An employer may not deduct any part of a contribution from the wages of an individual in the employer's employ."

La. Rev. Stat. Ann. § 23:1531:  "Contributions shall accrue and become payable by each employer...with respect to wages for employment.  These contributions shall become due and be paid by each employer...and shall not be deducted, in whole or in part, from the wages of individuals in the employer's employ."

13

costs; it does not deduct these contributions from the paychecks given to its employees, including drivers.[20] Although the statutes delineate the functions of withholding and remitting these taxes as the responsibility of the employer vis-à-vis the taxing authority, they only bar deduction of the employer's portion of these taxes from the "wages of an individual in the employer's employ." The statutes do not prohibit employers from charging back and deducting from independent contractors, suppliers, lessors, or other non-employee personnel, funds to defray the employer's costs in connection with those taxes. As the arrangement embodied in Acme's lease agreement does not contravene federal or state laws or regulations, much less their respective public policies, Acme may, in keeping with its contracts, lawfully deduct part of its employee-related expenses from its rental payments to lessors qua lessors, even if Acme incurs those expenses by virtue of its employment of lessors qua drivers.

III.

CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of Acme is

AFFIRMED.

---

[20] Pursuant to federal law, Acme withholds the employees' share of required federal and state income and social security (FICA) taxes, including deductions from drivers.