William Lloyd BRIDGES, Appellant,

v.

ANDREWS TRANSPORT,
INC., Appellee.

No. 09–01–477 CV.

Court of Appeals of Texas,
Beaumont.

Submitted on May 16, 2002.

Decided Oct. 10, 2002.

Scott H. McLemore, Fibich Hampton Leebron & Garth, LLP, Herbert T. Schwartz, Williams Bailey Law Firm, LLP, Houston, James E. Payne, Provost Umphrey Law Firm, LLP, Beaumont, for appellant.

J. Hoke Peacock, II, Beaumont, John Allen Chalk, Sr., Jerry K. Sawyer, Brent Shellhorse, Whitaker, Chalk, Swindle & Sawyer, LLP, Fort Worth, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

William Lloyd Bridges sued Andrews Transport, Inc. and Andrews Leasing, Inc.[1] for fraud, conversion, restitution of money had and received, unjust enrichment, and breach of contract. Andrews Transport, Inc. filed a counterclaim against Bridges for conversion, unjust enrichment, restitution for money paid, quantum valebant, and declaratory judgment. The trial court granted a summary judgment for Andrews Transport, Inc., and denied summary judgment for Bridges. Bridges presents eight issues on appeal.

Bridges is a truck driver who owns his own truck. Bridges and Andrews Transport entered into a lessor/lessee relationship created by a written Equipment Lease Agreement of a 1989 Kenworth truck. Bridges and Andrews Transport also entered into an employment relationship created by an at-will employment agreement. According to the uncontroverted statement in the appellees' brief,

---

1. Bridges alleged that Andrews Transport, Inc. was the alter ego of its parent corporation, Andrews Leasing, Inc. No error is raised regarding Andrews Leasing, Inc. William Andrews and Gary Andrews also filed answers to a second amended petition filed by Bridges, but that petition is not included in the record so we cannot determine what allegations Bridges made against the two individual defendants. No error is raised regarding those defendants. The trial court's order, which granted the Andrews Transport's motion for summary judgment and denied the plaintiff's motion for summary judgment, contains the statement, "This judgment finally disposes of all parties and all claims and is appealable." Therefore, the judgment is final and impliedly denied all the claims not expressly granted in the order. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex.2001). No error has been raised specifically regarding Andrews Leasing, Inc., William Andrews, and Gary Andrews.

both the lease contract and Bridges's employment with Andrews ended May 12, 1997.

The Equipment Lease included the following language:

Lessor [Bridges] shall pay all of the expenses on his/her equipment, including, but not limited to, driver's wages, federal and state taxes levied upon payroll, worker's compensation insurance, license tags, registration fees, inspection fees, fuel, oil, parts, tires, labor charges, highway use tax, fire, theft, and collision insurance, Ad Valorem tax, personal property tax, IMC tax, and any other taxes levied against his/her equipment and any other expenses which may be incurred based upon operation of the vehicle, within the limits of the operating authorities of Lessee.

At Lessee's [Andrews Transport, Inc.] option, Lessor may charge any of the above items to Lessee; however any such expenses paid by Lessee on behalf of Lessor shall require appropriate pre-approval by Lessee and shall be deducted from Lessor's next settlement check.

The Equipment Lease provided for payment, as follows:

7. Settlements. Lessee will pay Lessor 67 % of freight revenue per applicable tariffs or contracts.

Lessee will prepare settlements on a bi-weekly basis, with payment being issued every other Wednesday for the period ended the previous Friday for all shipments on which Lessee has received properly and completely filled in driver logs, freight bills, and shippers' manifest. LESSOR WILL RECEIVE NO CASH PAYMENTS UNTIL ALL DEFICITS HAVE BEEN PAID IN FULL.

During the course of the relationship between the parties, Bridges would receive for his services as a driver wages from which the employee's contribution towards payroll taxes had been withheld. A separate settlement for rent of Bridges's truck would reflect deductions for "DRIVER WAGES," "PAYROLL FICA EXPENSES," "PAYROLL FUTA EXPENSE," "PAYROLL SUTA EXPENSES," and "WORKMENS COMPENSATION EXP" from the gross revenue collected during the payment period for hauls made with the truck. The payments were reported as rents to the Internal Revenue Service on a Form 1099, and Bridges reported those proceeds as either a business profit or loss. In other words, in his capacity as the lessor of the truck, Bridges was obligated to supply a driver and pay the concomitant taxes. The equipment lease allowed Andrews to hire a driver, for whom it paid state and federal payroll taxes and unemployment taxes, but the lease payment was reduced by the amount of the expenses related to the driver's employment.

In his petition, Bridges alleged that the deductions from his compensation under the lease agreement, which were attributed to taxes and workers' compensation coverage, are statutorily mandated to be the employer's responsibility and were tortiously passed on to him. In his motion for summary judgment, Bridges alleged that he had been defrauded because Andrews gave him a handbook stating that Andrews would provide Social Security, workers' compensation, state disability, and unemployment insurance, when in fact those benefits were paid by the employee. The motion for summary judgment filed by Andrews argued that Bridges had a dual relationship with Andrews, that his status as an employee was separate and distinct from his status as a lessor, and that recognition of the separate legal relationships precluded all of Bridges's claims as a matter of law. In his deposition,

Bridges acknowledged that he was an employee of Andrews in 1996 and 1997 and at the same time he had another relationship with Andrews, in which he was an "owner operator" leasing his truck to Andrews. Bridges also acknowledged that, although he could have worked without doing so, he elected to become an employee of Andrews so that he could acquire hospitalization insurance benefits.

On appeal, Bridges argues: "Defendant's conduct in causing individuals it claims to employ to pay its employer taxes is void as a matter of law and the well-stated public policy found within numerous judicial decisions." Bridges contends that the trial court erred in failing to grant summary judgment in favor of Bridges because the lease agreement was void for illegality.[2] According to the appellant, the illegality resulted from Andrews' having caused the employee, Bridges, to pay his employer's employment tax liability.[3] Again according to the appellant, Andrews could not legally charge individuals the taxes for which Andrews was responsible, then claim tax deductions for those tax payments.[4] Bridges claims the employment and lease arrangement caused Bridges to be charged with both the employer's and employee's share of employment taxes through deductions from the lease payment; then Bridges had to pay his own self-employment taxes.[5] The appellant argues that public policy is violated by allowing an employer to avoid the payment of employer-mandated tax liability through the rental of personal property.[6] The trial court erred in dismissing all of Bridges's equitable claims, he asserts, because Andrews falsely represented to tax-

ing authorities that it paid taxes that it in fact had passed on to Bridges.[7]

In response to these issues, the appellees argue the dual but distinct relationships existing in this case have been recognized in other court decisions, most notably in *Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522 (5th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1298, 152 L.Ed.2d 210 (2002). Like our case, *Hathcock* involved a truck driver who leased his truck to his employer in a separate lease agreement that provided for a lease payment expressly derived from revenue less operating expenses, including payroll taxes. *id.* at 523. On appeal, Hathcock based his claims on the proposition that the employer, Acme, was responsible for state and federal Social Security and unemployment taxes, and the deductions from the rental check were, therefore, unlawful. *Id.* at 524. The Fifth Circuit first found that Hathcock was an employee, rather than an independent contractor. *Id.* at 526. Affirming the summary judgment for the trucking company, the court reasoned as follows:

> Undeterred, Hathcock argues alternatively that, even if Acme's lessor-drivers are deemed to be its employees, Acme nevertheless violates federal and state law when it deducts money from a lessor-driver's rental check to defray the employer's FICA, FUTA, and SUTA tax expenses. The tax liabilities created by those provisions, he contends, are the exclusive responsibility of employers. The relevant provisions, however, do not forbid Acme's practice of charging those employee costs back to its lessors.

2. Issue two.

3. Issue three.

4. Issue four.

5. Issue five.

6. Issue six.

7. Issue seven.

Acme expressly deducts from the *rental check* given to its *lessors* a fixed percentage of the drivers' wages to recoup its employee-related costs; it does not deduct these contributions from the *paychecks* given to its *employees*, including drivers. Although the statutes delineate the functions of withholding and remitting these taxes as the responsibility of the employer vis-a-vis the taxing authority, they only bar deduction of the *employer's* portion of these taxes from the "wages of an individual in the employer's employ." The statutes do not prohibit employers from charging back and deducting from independent contractors, suppliers, lessors, or other non-employee personnel, funds to defray the employer's costs in connection with those taxes. As the arrangement embodied in Acme's lease agreement does not contravene federal or state laws or regulations, much less their respective public policies, Acme may, in keeping with its contracts, lawfully deduct part of its employee-related expenses from its rental payments to lessors qua lessors, even if Acme incurs those expenses by virtue of its employment of lessors qua drivers.

*Id.* at 527–28 (footnotes omitted).

■ During oral argument, counsel for the appellant argued that a statute overlooked by the Fifth Circuit compels a different holding from that in *Hathcock*. The code relating to unemployment benefits provides: "An agreement by an individual employed by an employer to pay all or a portion of a contribution or reimbursement required to be paid by the employer under this subtitle is not valid." TEX. LAB.CODE ANN. § 207.071(b) (Vernon 1996). The contribution mentioned in Section 207.071 is found in Section 204.002 of the Labor Code. *See* TEX. LAB.CODE ANN. § 204.002 (Vernon 1996) (An employer shall pay a contribution on wages for employment paid.) The employer cannot deduct any part of the contribution from its employee's wages. *See* TEX. LAB.CODE ANN. § 204.003 (Vernon 1996). Thus, the right protected by Section 207.071 is established by the same statutes relied upon by the appellant in *Hathcock*. *See Hathcock*, 262 F.3d. at 528 n. 19. The lease payment, with its various deductions, related to the consideration for use of the truck, not the driver's wages. We conclude that Bridges's reliance on Labor Code Section 207.071 does not distinguish this case from *Hathcock*. The Fifth Circuit's reasoning in that case was sound. The existence of an employer/employee relationship does not render a simultaneously existing lessor/lessee relationship between the same parties void as a matter of law. We hold that the contract at issue in this case is not void for illegality. The separate causes of action raised in Bridges' petition all depend upon the illegality of the contractual arrangement between the parties. Because the underlying premise fails, summary judgment was appropriate as to all of Bridges causes of action.

■ In issue one, Bridges contends that summary judgment is precluded by the presence of the material fact issue of whether some of the deductions from the lease payments were for payment of employee taxes. Since issues two through seven are stated and argued as matters of law for which Bridges seeks rendition of judgment, we presume that issue one is argued in the alternative. There is no material dispute over the facts. The deductions represented payroll taxes and wages Andrews paid on behalf of and to Bridges in his capacity as its employee. The lease payment from which the deductions were made was for the use by Andrews of equipment Bridges owned, not for wages for Bridges's services as a driver. The records from which the lease

payments were calculated indicated that the revenue was collected on an account for a 1989 Kenworth truck owned by William Bridges. Bridges neither alleged nor produced any evidence to raise a fact issue that the equipment lease was a subterfuge disguising what was solely an employment relationship.

■ In issue eight, Bridges contends that the trial court erred in refusing to grant Bridges's motion to deem requests for admissions admitted on key issues regarding the illegality of Andrews's conduct. Bridges waived this issue by failing to brief his complaint. *See* Tex.R.App. P. 38.1(h).

We find no error in the judgment. Accordingly, we overrule issues one through eight and affirm the judgment.

AFFIRMED.