# United States Court of Appeals
# for the Fifth Circuit

———————

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2024

Lyle W. Cayce
Clerk

No. 23-50194

———————

Robert Anthony Zaragoza,

*Plaintiff—Appellant*,

*versus*

Union Pacific Railroad Company, *a Delaware Corporation*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CV-287

———————————————————————

Before Willett, Wilson, and Ramirez, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

*American Pipe* tolling equitably freezes the statute of limitations for all putative or certified class members during the pendency of a class action. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974). Plaintiff-Appellant Robert Zaragoza contends *American Pipe* salvages his otherwise untimely discrimination claims against Defendant-Appellee Union Pacific Railroad Company. Zaragoza asserts that his claims were tolled from 2016 to 2020 because he was a putative and certified class member in a separate class action against Union Pacific during that period. The district court rejected Zaragoza's argument and dismissed his claims at summary judgment, as

untimely. However, because the operative complaint and certification order in the class action both contained class definitions that included Zaragoza, his claims were tolled, and the district court erred by concluding otherwise. We reverse the district court's dismissal of Zaragoza's disability discrimination claims and remand for further proceedings.

## I.

## A.

Zaragoza worked as a brakeman and train conductor for Union Pacific from November 2006 to April 2016. Zaragoza's employment was terminated in July 2015 after he tested positive for cocaine; he was reinstated in September 2015. Throughout Zaragoza's tenure, including after his reinstatement, Union Pacific administered a fitness-for-duty program to comply with various internal and federal safety regulations. Union Pacific's Medical Rules establish the fitness-for-duty program, which applies to all employees and post-offer applicants. That program includes tests designed to assess employees' color vision acuity.

One such test, the Ishihara test, requires subjects to identify numbers and figures made up of multi-colored dots across fourteen plates. Zaragoza passed an Ishihara test when he began his employment in 2006, though he failed them in 2010, 2013, and 2016. When Zaragoza failed those Ishihara tests, he was given additional field tests to assess his color vision. In 2010 and 2013, Union Pacific's alternate field test required the subject to identify ten wayside signal configurations in a preset order. Zaragoza passed the field test in those years, and he was allowed to continue working as a conductor.

However, in 2014, Union Pacific amended its fitness-for-duty program. Some of the changes included suspension from duty without pay, further testing requirements, and, in some cases, termination from the company if an employee disclosed or Union Pacific discovered certain

medical or physical conditions. Applicable here, the updated policy also required those who failed the Ishihara test to complete a new field test using a light cannon. The light cannon was placed a quarter mile away from the examinee, and the examinee was shown twenty separate signal lights for three seconds each, which the examinee then had to identify. When Zaragoza failed the Ishihara test on April 8, 2016, he was removed from service. After he also failed the light cannon test on April 19, 2016, he was denied recertification as a train conductor on May 3, 2016.

Over the next few months, Zaragoza contested Union Pacific's determination that he had a color vision deficiency. Zaragoza submitted various reports from doctors attesting to his adequate color vision, though he wore special contact lenses to pass at least one of his doctor's tests. There is a question whether Zaragoza wore similar corrective lenses for the Union Pacific tests that he passed in 2006, 2010, and 2013. Regardless, Zaragoza was never reinstated as a conductor.

**B.**

As we will discuss *infra*, according to Zaragoza, the proceedings in *Harris v. Union Pacific Railroad Co.* tolled his eventual claims regarding the updated fitness-for-duty policy against Union Pacific. 329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). In February 2016—two months before Zaragoza failed Union Pacific's color vision tests in April 2016—Quinton Harris and five other named plaintiffs filed their first amended complaint in *Harris*, bringing disability discrimination claims against Union Pacific on behalf of current and former Union Pacific employees. This operative complaint defined the relevant class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300

days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Union Pacific does not contest that Zaragoza fell within this class definition.

Over two years later, in August 2018, the *Harris* plaintiffs moved for class certification under a slightly revised class definition:

All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

The *Harris* plaintiffs supported their motion with forty-four declarations from prospective class members, including three declarations from workers who—like Zaragoza—had suspected or admitted color vision deficiencies. The *Harris* plaintiffs also supported their motion with a prospective class list—originally produced by Union Pacific—of 7,723 current or former Union Pacific employees, including Zaragoza.

In February 2019, the district court granted class certification using the exact language from the *Harris* plaintiffs' proposed revised class definition, while referencing the forty-four declarations as being from "class members." *Harris*, 329 F.R.D. at 624 & n.3. The district court also adopted the *Harris* plaintiffs' proposed class list and ordered that notices be sent to the listed individuals, which still included Zaragoza. *Id.* at 627–28.

Union Pacific appealed the class certification to the Eighth Circuit, asserting that the class presented too many individualized questions. In its arguments, Union Pacific referenced vision issues among class members and cited two of the declarations submitted by Union Pacific workers with alleged color vision deficiencies as examples of why the certified class was too unwieldy. The Eighth Circuit ultimately agreed with Union Pacific and

decertified the class in an opinion issued on March 24, 2020. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1039 (8th Cir. 2020).

## C.

Zaragoza filed his disability discrimination charge with the EEOC on March 8, 2020, just before the Eighth Circuit decertified the *Harris* class. After the EEOC completed its review of his case in October 2021, Zaragoza filed this action in November 2021, bringing claims for disparate treatment, disparate impact, and failure to accommodate. The district court dismissed Zaragoza's failure to accommodate claim at the motion to dismiss stage as time-barred, and that decision has not been appealed. The district court then dismissed Zaragoza's remaining claims via summary judgment as untimely, finding that the *Harris* district court's February 2019 certification order ended tolling for his claims and that the applicable 300-day statute of limitations expired before March 2020. The district court did not reach the merits of the parties' other arguments. Zaragoza appealed the district court's summary judgment in favor of Union Pacific.

## II.

We review "summary judgment[s] *de novo*, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (emphasis added). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Howell v. Town of Ball*, 827 F.3d

515, 522 (5th Cir. 2016) (quoting *Moss*, 610 F.3d at 922).  The equitable underpinnings of *American Pipe* tolling do not affect our standard of review. *See Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 319 (5th Cir. 2014); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 516 (5th Cir. 2008).

## III.

Zaragoza contends that his discrimination claims against Union Pacific should benefit from *American Pipe* tolling and are timely.  We agree. (A) Surveying the applicable law, a putative class is defined by the plaintiffs' operative complaint, at least until that class is certified, when the district court's certification order supplants the definition as pled.  Applying these principles, (B) we determine that Zaragoza's claims were tolled by his inclusion in both the putative and certified class definitions in the *Harris* class action.  Thus disposing of the main issue on appeal, (C) we decline to engage Union Pacific's contention that the district court's dismissal of Zaragoza's claims should be upheld on alternate grounds.

## A.

Under *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.  In *Crown, Cork & Seal Co. v. Parker*, the Supreme Court reiterated *American Pipe*'s holding, articulating that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  462 U.S. 345, 354 (1983).  This rule guards against "protective motions to intervene" or individual suits from every involved party wary that their rights may be in jeopardy.  *American Pipe*, 414 U.S. at 553.  It necessarily sweeps broadly to cover even "asserted class members

who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings." *Id.* at 552.

A class is initially defined by the plaintiffs via their complaint. *Cf. id.* at 554 (emphasizing that "asserted members of the class" benefit from tolling). Plaintiffs have the prerogative to define the scope of claims that they bring and notify defendants "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 555. As class actions progress, plaintiffs may expand, narrow, or otherwise refine their action by filing amended pleadings. These amended class definitions supersede prior ones for tolling purposes. *See Odle*, 747 F.3d at 316–19 (analyzing a plaintiff's entitlement to tolling based in part on a prior class action's amended pleading).

However, plaintiffs' prerogative to redefine a class does not extend beyond amending their pleadings. From there, the onus falls to the district court to "define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Salazar-Calderon v. Presidio Valley Farmers Ass'n (Calderon I)*, 765 F.2d 1334, 1350 (5th Cir. 1985) (quoting *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.), *cert. denied*, 464 U.S. 1009 (1983)). Accordingly, class definitions are not affected by intervening motions in a class action—even motions to certify a class. This practice of placing the class definition exclusively in the hands of the district judge after the pleading stage promotes "efficiency and economy of litigation," which is one of the chief goals of the equitable tolling doctrine. *American Pipe*, 414 U.S. at 553. Relevant here:

> When a class is certified . . . the district court has necessarily determined that all of the Rule 23 factors are met. From that point forward, unless the district court later decertifies the class for failure to satisfy the Rule 23 factors, members of the

> certified class may continue to rely on the class representative
> to protect their interests throughout the entire prosecution of
> the suit, including appeal.

*Taylor*, 554 F.3d at 520–21. Thus, when a district court certifies a class, that certified class becomes the pertinent class definition.[1] Further, the class definition persists through appeal.[2] A subsequent decertification of that class, either by the district court or the appellate court, ends tolling going forward but does not affect the earlier class certification for tolling purposes.

To summarize: Prior to class certification, the pertinent class definition in a class action is drawn from the plaintiffs' operative complaint(s). That class definition is not disturbed by precertification motions practice during the life cycle of a class action. And at the point a district court certifies a class, the certified class definition supersedes any previously articulated ones. That certified class persists—even through appeal—until the class is decertified or the case is otherwise resolved.

## B.

Today's task is to determine whether Zaragoza was part of the *Harris* class, and if so, how long he was included in the class. Relevantly, Zaragoza's claims accrued in April 2016 when he was removed from service,

---

[1] Here, the pertinent class was actually a subclass within the *Harris* class action. But as Federal Rule of Civil Procedure 23(c)(5) explains, "a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5).

[2] By comparison, when a district court denies class certification, tolling immediately ends for putative class members. *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013). Even if the district court is reversed on appeal and subsequently certifies the class it previously denied, the statute of limitations for the claimants would have resumed and possibly expired during the intervening period. *Calderon v. Presidio Valley Farmers Ass'n (Calderon II)*, 863 F.2d 384, 390 (5th Cir. 1989); *see also Odle*, 747 F.3d at 321 (discussing *Calderon I* and *Calderon II*).

approximately two months after the operative complaint in *Harris* had been filed.[3]  And Zaragoza filed his own charge of discrimination in March 2020 shortly before the Eighth Circuit decertified the *Harris* class.  This timeline narrows our inquiry to two key points.  First, looking to the then-operative pleading, was Zaragoza included in the class definition of the February 2016 complaint in *Harris*?  Second, was Zaragoza included in the *Harris* district court's certified class?  We answer both questions affirmatively, such that Zaragoza was consistently a member of the *Harris* class for tolling purposes.

**1.**

The operative complaint in *Harris* was an amended complaint filed on February 19, 2016.  That complaint defined the relevant proposed class as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

The district court in this case did not address whether this class definition encompassed Zaragoza, and Union Pacific does not argue that Zaragoza was excluded from it.

The lack of attention on this point underscores its relative simplicity.  After all, Zaragoza failed a color vision test administered through Union Pacific's fitness-for-duty program that resulted in the loss of his job over his objection.  These circumstances easily place Zaragoza within the class

---

[3] Arguably, Zaragoza's claims accrued in May 2016 when he was denied recertification, but the parties do not address this detail, and it does not bear on our analysis.

definition alleged in the operative February 2016 *Harris* complaint. In practical terms, this means the limitations period on Zaragoza's claims against Union Pacific was tolled from the moment his claims accrued—as the operative complaint in *Harris* was already on file at that time.[4] The tolling effect of this class definition persisted at least until the district court certified the *Harris* class and adopted a revised class definition.

**2.**

The *Harris* class was certified under a revised definition on February 5, 2019. Zaragoza initiated his EEOC proceedings on March 8, 2020. Accordingly, allowing that Zaragoza was a member of *Harris*'s February 2016 proposed class definition, he must also have been a member of the revised definition; otherwise, the statute of limitations for his claims would have started to run on February 5, 2019, and expired before March 8, 2020. *See, e.g.*, *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (describing the 300-day statute of limitations for discrimination claims under the Americans with Disabilities Act).

As highlighted above, the *Harris* district court certified a class of plaintiffs including "[a]ll individuals who ha[d] been or w[ould] be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of [*Harris*]." 329 F.R.D. at 628. In its order, the court referenced "declarations from 44 *class members* who have experienced the discrimination alleged herein." *Id.* at 624 (emphasis added). Those included several employees with admitted or alleged color vision deficiencies. The *Harris* district court also directed that

_____

[4] *American Pipe* explains that tolling a statute of limitations simply pauses the clock; it does not reset it. 414 U.S. at 560–61. In other words, if certain claims are tolled eleven days before the statute of limitations expires—as was the case in *American Pipe*—then the plaintiff only has eleven days to act once tolling ceases. *Id.* at 561.

notice of the class claims be sent to a "class list," which included Zaragoza, though there is no indication those notices were distributed. *Id.* at 627–28.

Union Pacific consistently objected that this class definition was overbroad, and the Eighth Circuit ultimately agreed on appeal. *Harris*, 953 F.3d at 1039. But Union Pacific's position and its success on appeal only support the conclusion that the class as certified was expansive for tolling purposes. The upshot seems plain: The *Harris* district court's certified class included Zaragoza as a member, and the court as well as those parties so treated him. That alone could, and perhaps should, end the inquiry. *See Calderon I*, 765 F.2d at 1350 (recognizing "that these complex cases cannot be run from the tower of the appellate court given its distinct institutional role and that it has before it printed words rather than people" (quoting *Richardson*, 709 F.2d at 1019)). However, in this action, Union Pacific nonetheless contends that Zaragoza falls outside of the certified class based on the class definition.[5]

But even considering the matter afresh, we conclude that Zaragoza fell within *Harris*'s certified class definition, as revised from the one proposed in February 2016. To review, he failed an Ishihara color vision test in 2016. This result indicated that an aspect of Zaragoza's health, namely his color vision, had deteriorated since his last recertification and warranted further review. Under Union Pacific's fitness-for-duty program, this "reportable health event" triggered a follow up test using the light cannon. When Zaragoza also failed the light cannon test, he suffered an adverse employment action—the loss of his job. Therefore, Zaragoza is an "individual[] who ha[d] been . . . subject to a fitness-for-duty examination as a result of a reportable

---

[5] Union Pacific may well be estopped from discarding its previous representations of the *Harris* class's overbreadth to argue here that same class was narrow enough to have excluded Zaragoza. Zaragoza does not press this possibility, so we do not explore it either.

health event" during the class period encompassed by the certified class definition. *Harris*, 329 F.R.D. at 628.

Of course, this conclusion hinges on whether Zaragoza's failed Ishihara test in 2016 was a "reportable health event"—a conclusion that Union Pacific vigorously contests. A "reportable health event," as used in the certified class definition, is a term of art drawn from Union Pacific's Medical Rules, meaning "a new diagnosis, recent event, or change in a prior stable condition." A "[s]ignificant vision change in one or both eyes affecting . . . color vision" is specifically enumerated in Appendix B of the Medical Rules as a "reportable health event." Noting Zaragoza's repeated failures of the Ishihara test in 2010, 2013, and 2016, his passing the prior alternate test in 2010 and 2013, and his failing the new light cannon test in 2016, Union Pacific argues that "[t]hese results suggest a change in testing methods, rather than a change in Zaragoza's vision." This may prove to be true, but it is far from undisputed. Indeed, the alleged impropriety of the light cannon test and adequacy of Zaragoza's color vision are core aspects of his disability discrimination claims against Union Pacific. And "construing all facts and reasonable inferences in favor of the nonmoving party," *Lillie v. Off. of Fin. Institutions State of Louisiana*, 997 F.3d 577, 582 (5th Cir. 2021), as we must at this stage, Zaragoza's failed Ishihara test in 2016 at least suggested that his previously certified color vision acuity may have no longer been passable, such that it met the definition of a "reportable health event."

As a final point, the district court in this case cited two out-of-circuit cases, *Smith v. Pennington*, 352 F.3d 884 (4th Cir. 2003), and *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248 (10th Cir. 1994), for the proposition that "once a court adopts a class definition that unambiguously excludes certain plaintiffs, their individual limitations periods begin to run." The Ninth Circuit recently reached the same conclusion in a companion case to the one before us. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091 (9th Cir.

2024). We agree, but because we think the class definition does not unambiguously exclude Zaragoza, this principle supports Zaragoza's position, not Union Pacific's.[6]

"Ending *American Pipe* tolling with anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court" by "encourag[ing] putative or certified class members to rush to intervene as individuals or to file individual actions." *DeFries*, 104 F.4th at 1099. Indeed, "the class action mechanism would not succeed in its goal of reducing repetitious and unnecessary filings if members of a putative class were required to file individual suits to prevent their claims from expiring." *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013). Based on our assessment of Zaragoza's claims, the class definition certified by the *Harris* district court included him. At least, given the record before us, Zaragoza was not "*unambiguously excluded*" from the *Harris* certified class. *DeFries*, 104 F.4th at 1105 (emphasis added). Thus, Zaragoza's claims were tolled during the pendency of the *Harris* certified class.

\*     \*     \*

Zaragoza was included in the class definition of the operative February 2016 complaint in *Harris*. His claims were also included within the *Harris* district court's certified class definition. Thus, Zaragoza's claims were tolled from the moment they accrued until the Eighth Circuit issued its mandate decertifying the *Harris* class, which effectively ended tolling for all putative

---

[6] These precedents also confirm our consultation of Union Pacific's Medical Rules for the definition of "reportable health event." Two of these circuits explicitly considered materials outside of the complaints and motions for certification in delineating class membership. *See DeFries*, 104 F.4th at 1107–09; *Pennington*, 352 F.3d at 894–95. The other did not have record evidence outside of the complaint and motion for certification before it but was open to considering such evidence. *See Sawtell*, 22 F.3d at 253 & n.11.

*Harris* class members. *Harris*, 953 F.3d at 1039; *see also Hall*, 727 F.3d at 374 ("[T]he statute of repose ceased to be tolled when the class certification order was vacated."). But by the time the Eighth Circuit rendered its decision, Zaragoza had initiated EEOC proceedings for his claims. Therefore, those claims were timely asserted.

## C.

Union Pacific raises several alternate grounds upon which we might affirm the district court's grant of summary judgment. Particularly, Union Pacific contends that Zaragoza's claims fail under the *McDonnell Douglas* framework and that Zaragoza was not a qualified employee due to his purported color vision deficiency. Zaragoza responds to these arguments in his reply, but the district court did not reach any of them in its decision.

"[A] court of appeals sits as a court of review, not of first view." *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (citation omitted). This cautionary refrain has especial force when a potential alternate ground for affirmance involves a "fact intensive" summary judgment record, as it does here. *See, e.g.*, *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 366 (5th Cir. 2023) (quoting *Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 527 (5th Cir. 2001)) (reversing and remanding instead of reaching a fact intensive summary judgment argument in the first instance). In such a case, "[g]iven that the district court did not reach [the issues], the normal course would be to remand for the district court to do so." *Montano*, 867 F.3d at 546. Accordingly, we decline Union Pacific's invitation to affirm the district court on heretofore unexplored grounds; that court may consider the parties' remaining summary judgment arguments on remand. We forecast no opinion on the relative merits of the parties' assertions on these issues.

No. 23-50194

## IV.

Zaragoza was included in the *Harris* class, as pled in February 2016 and as initially certified in February 2019. Therefore, his disability discrimination claims were tolled from the time they accrued until he asserted them, as an individual claimant, with the EEOC in March 2020. The district court's summary judgment dismissing Zaragoza's claims as untimely was therefore in error. We decline to consider the parties' remaining summary judgment arguments in the first instance.

REVERSED and REMANDED.